

**U.S. Department of Justice**

*United States Attorney's Office*
*District of New Jersey*

*970 Broad Street, 7th floor*          973-645-2700
*Newark, New Jersey 07102*

April 17, 2026

Hon. Rukhsanah L. Singh, U.S.M.J.
United States Magistrate Judge
U.S. District Court for the District of New Jersey
Clarkson S. Fisher Building and U.S. Courthouse
402 East State Street
Trenton, New Jersey 08608

> Re:    *In re Extradition of Yechiel Yehoshua Farkash a/k/a Yechiel Farkas,*
> Mag. No. 26-14012

Dear Judge Singh:

Please accept this letter in lieu of a more formal submission. The United States submits this letter to: (1) briefly set forth the legal authorities and procedures applicable to the extradition proceedings of fugitive Yechiel Yehoshua Farkash a/k/a Yechiel Farkas ("Farkash" or the "fugitive"); and (2) respectfully request that Farkash — a fugitive whose arrest the Government of Israel seeks with a view toward extradition—be detained during the pendency of his extradition proceedings.

By way of background, on December 10, 2025, Judge Zippora Giloni-Gez of the Tel Aviv-Yafo Magistrate's Court signed a warrant to arrest Farkash for the offenses of: (1) attempted rape, in violation of Section 345(a)(1) of Israel's Penal Law ("IPL"), together with IPL Section 25; (2) indecent acts through abuse of authority and educational relationship, in violation of IPL Section 348(d)(1); and (3) indecent acts against a minor under the age of 16 without free consent, in violation of IPL Section 348(b) in the circumstances described in IPL Section 345(b)(1). *See* Complaint, Mag. No. 26-14012, ECF 1. As the Complaint sets forth in greater detail, Farkash is charged with sexually abusing two minor students between 2020 and 2023 at Torat Hahayim Yeshiva in Bnei Brak, Israel, an educational institution for ultra-Orthodox boys, while employed as the school's Pedagogical Director. Farkash has been provisionally arrested and is scheduled to make his initial appearance before Your Honor on April 17, 2026 at 11:30 a.m..

## A.    Brief Legal Framework Regarding Extradition Proceedings

The extradition process is neither a criminal nor a civil proceeding. Title 18, United States Code, Section 3184 provides, in relevant part, the following:

> Whenever there is a treaty or convention for extradition between the United States and any foreign government … any magistrate judge authorized so to do by a court of the United States, … may, upon complaint made under oath, charging any person found within his jurisdiction, with having committed within the jurisdiction of any such foreign government any of the crimes provided for by such treaty or convention, or provided for under section 3181(b),[1] issue his warrant for the apprehension of the person so charged, that he may be brought before such … magistrate judge, to the end that the evidence of criminality may be heard and considered. … If, on such hearing, he deems the evidence sufficient to sustain the charge under the provisions of the proper treaty or convention, or under section 3181(b), he shall certify the same, together with a copy of all the testimony taken before him, to the Secretary of State, that a warrant may issue upon the requisition of the proper authorities of such foreign government, for the surrender of such person, according to the stipulations of the treaty or convention; and he shall issue his warrant for the commitment of the person so charged to the proper jail, there to remain until such surrender shall be made.

---

[1] Title 18, United States Code, Section 3181(b) provides as follows:

> The provisions of this chapter [Chapter 209 – Extradition] shall be construed to permit, in the exercise of comity, the surrender of persons, other than citizens, nationals, or permanent residents of the United States, who have committed crimes of violence against nationals of the United States in foreign countries without regard to the existence of any treaty of extradition with such foreign government if the Attorney General certifies, in writing, that—
> (1) evidence has been presented by the foreign government that indicates that had the offenses been committed in the United States, they would constitute crimes of violence as defined Dunder section 16 of this title; and
> (2) the offenses charged are not of a political nature.

In other words, the Court's primary role in an extradition proceeding is to determine whether to certify to the Secretary of State that the submitted evidence is "sufficient to sustain the charge." 18 U.S.C. § 3184; *see also Sidali v. I.N.S.*, 107 F.3d 191, 195 (3d Cir. 1997); *Cheung v. United States*, 213 F.3d 82, 87–88 (2d Cir. 2000). The Secretary of State makes the ultimate decision whether the fugitive should be surrendered to the requesting country. *See* 18 U.S.C. §§ 3184, 3186; *Sidali*, 107 F.3d at 195.[2]

While the Federal Rules of Criminal Procedure do not apply in the extradition process – including at a fugitive's initial appearance – the undersigned recommends that the Court proceed with the following at Farkash's initial appearance:

- Inform the fugitive that Israel has requested his provisional arrest, with a view toward extradition, and inform him of the offenses that serve as the basis for that request;

- Consider appointing counsel if the fugitive is indigent;

- Consider whether the fugitive has overcome the strong presumption in favor of detention in an international extradition proceeding, or set a briefing schedule to consider any motion the fugitive may wish to make concerning release on bail pending the extradition hearing;[3] and

- Consider scheduling a status hearing to occur 60+ days after the provisional arrest, at which (a) the United States will provide an update concerning whether the U.S. Department of State has received a timely, formal extradition request from the Government of Israel, in accordance with Article XI(4) of the Treaty; and (b) the Court will set a pre-hearing

---

[2] "This bifurcated procedure reflects the fact that extradition proceedings contain legal issues peculiarly suited for judicial resolution, such as questions of the standard of proof, competence of evidence, and treaty construction, yet simultaneously implicate questions of foreign policy, which are better answered by the executive branch." *United States v. Kin-Hong*, 110 F.3d 103, 110 (1st Cir. 1997).

[3] *See* Abbell, Michael, Extradition to and from the United States §4–1 (2010).

briefing schedule and a date for the fugitive's extradition hearing pursuant to 18 U.S.C. § 3184.[4]

At the extradition hearing, the Court's review will be limited to determining whether:

(1)     the judicial officer is authorized to conduct the extradition proceeding;

(2)     the Court has jurisdiction over the fugitive;

(3)     the applicable treaty is in full force and effect;

(4)     the treaty covers the crime for which extradition is requested; and

(5)     sufficient evidence exists to support a finding of probable cause as to the offense for which extradition is sought.

*See Hoxha v. Levi*, 465 F.3d 554, 560 (3d Cir. 2006).

Following an extradition hearing, if the Court finds that the requirements for certification have been met, the Court must furnish the certification to the Secretary of State, together with a copy of any testimony taken before the Court, and must commit the fugitive to the custody of the United States Marshal to await the Secretary's final determination regarding surrender. 18 U.S.C. § 3184; *see Cheung*, 213 F.3d at 88.

### B.     Farkash Should Be Detained Pending His Extradition

The United States respectfully requests that Farkash be detained pending his extradition to Israel. The federal statute governing extradition procedures in the United States, 18 U.S.C. §§ 3184 *et seq.*, does not provide for bail. Further, the Bail Reform Act, 18 U.S.C. §§ 3141 *et seq.*, does not apply here because an extradition proceeding is not a criminal case. *See Collins v. Loisel*, 259 U.S. 306, 316 (1922).

"There is a presumption against bail in extradition cases." *Hababou v. Albright*, 82 F. Supp. 2d 347, 351 (D.N.J. 2000) (citing *Wright v. Henkel*, 190 U.S. 40, 63 (1903));

---

[4] *See* Convention on Extradition Between the Government of the United States of America and the Government of the State of Israel, U.S.-Isr., Dec. 10, 1962, 14 U.S.T. 1707 (the "Convention"), *as amended by* Protocol Between the Government of the United States and the Government of the State of Israel Amending the Convention on Extradition Signed at Washington, D.C. on December 10, 1962, U.S.-Isr., July 6, 2005, S. TREATY. DOC. NO. 109-3 (2005) (the "Protocol"; together with the Convention, the "Treaty").

*United States v. Leitner*, 784 F.2d 159, 160 (2d Cir. 1986). "[B]ail should be granted only in the most pressing circumstances, and when the requirements of justice are absolutely peremptory.") (quoting *In re Mitchell*, 171 F. 289, 289 (S.D.N.Y. 1909)).

This presumption against bail is rooted in *Wright v. Henkel*, where the Supreme Court explained that when a foreign government makes a proper request under a valid extradition treaty, the United States is obligated to deliver the person sought after he or she is apprehended:

> The demanding government, when it has done all that the treaty and the law require it to do, is entitled to the delivery of the accused on the issue of the proper warrant, and the other government is under obligation to make the surrender; an obligation which it might be impossible to fulfil if release on bail were permitted. The enforcement of the bond, if forfeited, would hardly meet the international demand; and the regaining of the custody of the accused obviously would be surrounded with serious embarrassment.

190 U.S. at 62.

When, as here, the Government of Israel meets the conditions of the applicable extradition treaty, the United States is obliged to deliver the fugitive. It is important that the United States be regarded in the international community as a country that honors its agreements to be positioned to demand that other nations meet their reciprocal obligations to the United States. Such reciprocity would be defeated if a fugitive flees after being released on bond. *See Leitner*, 784 F.2d at 160–61 (observing that the government has an overriding foreign relations interest in complying with treaty obligations and producing extradited persons).

A fugitive may not be released on bail unless he demonstrates that (1) he is neither a flight risk nor a danger to the community, and (2) "special circumstances" warrant his release. *See, e.g., Leitner*, 784 F.2d at 160; *Hababou*, 82 F. Supp. 2d at 351 ("Special circumstances are limited to those situations in which the justification for release is pressing as well as plain."); *In re Extradition of Rovelli*, 977 F. Supp. 566, 568 (D. Conn. 1997). "This 'special circumstances' standard is much stricter than the 'reasonable assurance' of appearance standard made applicable to domestic criminal proceedings by the Bail Reform Act." *In re Extradition of Kin-Hong*, 913 F. Supp. 50, 53 (D. Mass. 1996). The "special circumstances" inquiry is separate from considerations of danger to the community or risk of flight. *Leitner*,

784 F.2d at 160; *Rovelli*, 977 F. Supp. at 567–68. Accordingly, a fugitive who poses a danger to the community or a risk of flight should be denied bail, even in the face of special circumstances. *In re Extradition of Siegmund*, 887 F. Supp. 1383, 1384 (D. Nev. 1995).

Courts have rejected a lengthy list of would-be special circumstances, including:

(1)     The fugitive's need to consult with his attorney and/or participate in pending litigation, *see Rovelli*, 977 F. Supp. at 569;

(2)     the complexity of the pending litigation, *see United States v. Kin-Hong*, 83 F.3d 523 (1st Cir. 1996); *United States v. Tang Yee-Chun*, 657 F. Supp. 1270, 1271–72 (S.D.N.Y. 1987);

(3)     health issues including discomfort, dietary needs, or associated health concerns while incarcerated, *see, e.g., In re Extradition of Garcia*, 615 F. Supp. 2d 162, 173–74 (S.D.N.Y. 2009); *In re Extradition of Hamilton-Byrne*, 831 F. Supp. 287, 290 (S.D.N.Y. 1992);

(4)     United States citizenship or pendency of naturalization proceedings, *see, e.g., In re Extradition of Antonowicz*, 2017 WL 1197855, at \*3 (C.D. Cal. Mar. 27, 2017); *In re Extradition of Knotek*, 2016 WL 4726537, at \*7 (C.D. Cal. Sept. 8, 2016); *In re Extradition of Sacirbegovic*, 280 F. Supp. 2d 81, 84 (S.D.N.Y. 2003); *In re Extradition of Orozco*, 268 F. Supp. 2d 1115, 1117 (D. Ariz. 2003);

(5)     that the fugitive may have been living openly, *see, e.g., Leitner*, 784 F.2d at 160–61; *In re Extradition of Pelletier*, 2009 WL 3837660, at \*1, 3–4 (S.D. Fla. Nov. 16, 2009);

(6)     the fugitive's character, background, and/or ties to the community, *see, e.g., In re Extradition of Martinelli Berrocal*, 263 F. Supp. 3d 1280, 1305 (S.D. Fla. 2017); *Beresford-Redman*, 753 F. Supp. 2d at 1089; *In re Extradition of Sidali*, 868 F. Supp. 656, 658 (D.N.J. 1994);

(7)     ordinary delay or delay occasioned by the fugitive in the course of extradition proceedings, *see, e.g., In re Klein*, 46 F.2d 85 (S.D.N.Y. 1930); *Salerno v. United States*, 878 F.2d 317, 318 (9th Cir. 1989); *Antonowicz*, 2017 WL 1197855, at \*3;

(8)     the availability of electronic monitoring, *see Rovelli*, 977 F. Supp. at 569; and

(9)     availability of bail for the same offense in the requesting country, *see, e.g., Antonowicz*, 2017 WL 1197855, at *3, *Garcia*, 615 F. Supp. 2d at 172.

Courts "consistently agree that special circumstances are supposed to be limited to the most extraordinary circumstances and cannot involve factors applicable to all potential extraditees." *In re Extradition of Garcia*, 761 F. Supp. 2d 468, 472 (S.D. Tex. 2010).

The United States respectfully requests that the Court detain Farkash pending his extradition to Israel. The United States is currently unaware of factors that would allow Farkash to establish that (1) he is not a danger to the community; (2) he is not a flight risk; and (3) any special circumstances exist that would warrant his release pending extradition. The United States reserves its right to provide further argument in the event that Farkash comes forth with argument that he can establish the very high showing of all three factors.

Respectfully submitted,

ROBERT FRAZER
United States Attorney

By:    Sammi Malek
Assistant U.S. Attorney

- 7 -