**FEDERAL PUBLIC DEFENDER**
DISTRICT OF NEW JERSEY
K. ANTHONY THOMAS, FEDERAL PUBLIC DEFENDER

1002 BROAD STREET • NEWARK, NEW JERSEY 07102 • (973) 645-6347

October 6, 2026

**VIA ECF**
Hon. Rukhsanah L. Singh
United States Magistrate Judge
Clarkson S. Fisher Federal Building
& United States Courthouse
402 East State Street
Trenton, New Jersey 08608

*Re: In the Matter of the Extradition of Yechiel Yehoshua Farkash, Mag No. 26-14012 (RLS)*

Dear Judge Singh:

Please accept this letter brief in lieu of a more formal motion in support of Respondent Yechiel Farkash's opposition to the government's brief in support of extradition in this matter. Dkt. No. 24.

**Preliminary statement: the requirement of dual criminality**

As the government correctly notes in its brief, before authorizing extradition for a particular crime, "the Court must determine whether the conduct underlying the extradition request is also a crime in the United States, a requirement known as dual criminality." G'vt. brief at 17. Dual criminality requires that the foreign and domestic offenses be "substantially analogous" and that they share the same "essential character." *Manta v. Chertoff*, 518 F.3d 1134, 1141 (9th Cir. 2008); *Oen Yin-Choy v. Robinson*, 858 F.2d 1400 (9th Cir. 1988). Crucially, "no state shall use its processes to surrender a person for conduct which it does not characterize as criminal." *Gallo-Chamorro v. United States*, 233 F.3d 1298, 1306 (11th Cir. 2000). This Court should not authorize for extradition any counts for which the dual criminality requirement has not been met.

**POINT I – DUAL CRIMINALITY DOES NOT EXIST FOR THE 17 COUNTS OF ALLEGED INDENCENT ACTS THROUGH ABUSE OF AUTHORITY AND EDUCATIONAL RELATIONSHIP AGAINST Y.S. UNDER § 348(d)(1) OF ISRAEL'S PENAL LAW**

**A. The conduct alleged to violate § 348(d)(1) of Israel's Penal Law would not violate New Jersey's second-degree child endangerment statute, N.J. Stat. Ann. § 2C:24-4(a)(1)**

Mr. Farkash is alleged to have committed 17 counts of indecent acts through abuse of authority and educational relationship against Y.S. in violation of § 348(d)(1) of Israel's Penal Law. G'vt brief 3-7. The government alleges that dual criminality exits for these 17 counts because the conduct alleged would violate multiple New Jersey and United States criminal laws. First, the government asserts that the alleged conduct would violate New Jersey's second-degree child endangerment statute, N.J. Stat. § 2C:24-4(a)(1). G'vt. brief at 18. But crucially, in New Jersey, second-degree child endangerment charges can only be brought against a "person having a legal duty for the care of a child or who has assumed responsibility for the care of a child." *State v. McInerney*, 428 N.J. Super. 432, 442 (App. Div. 2012). The Supreme Court of New Jersey in *State v. Galloway*, 133 N.J. 631 (1993), held that the statutory term "assumed responsibility" applies narrowly to those who establish a "general and ongoing responsibility for the child" and a "continuing or regular supervisory or caretaker relationship." *Galloway* at 661. The statute does not apply to those who merely assume a "temporary, brief, or occasional caretaking function." (*Id.*).

Mr. Farkash is not alleged to have assumed a "regular supervisory or caretaker relationship" with regard to Y.S. According to the complaint, Mr. Farkash served as a pedagogical director of the yeshiva where Y.S. was a student. His administrative and pedagogical roles within the educational institution do not, as a matter of law, establish a quasi-parental duty of care or regular caretaker supervision over Y.S. Allegations that Mr. Farkash "gave the minor increased attention" or "summoned him to his office" fall short of establishing general, ongoing caretaker custody required by New Jersey law. G'vt. brief at 4. If extradited on these counts, Mr. Farkash faces trial and potential conviction in Israel based solely on proof of generic educational authority, without the prosecution ever having to prove the essential caretaker threshold mandated by U.S. law. The structural discrepancy between the types of

authority required by § 348(d)(1) of Israel's Penal Law and N.J. Stat. Ann. § 2C:24-4(a)(1) respectively defeats this theory of dual criminality.

### B. The *mens rea* requirements of § 348(d)(1) of Israel's Penal Law and New Jersey's second-degree child endangerment statute, N.J. Stat. § 2C:24-4(a)(1) are not substantially analogous

The government's theory of dual criminality also fails because of a discrepancy between the *mens rea* elements of the Israeli and New Jersey statutes. The Ninth Circuit in *Manta v. Chertoff* explicitly established that *mens rea* forms an indispensable component of the dual criminality analysis:

> Dual criminality requires that the 'conduct involved is criminal in both countries.' ... Because conduct is only criminal if performed with the required intent, we must consider whether [the relator's] alleged conduct evidences [the required intent] such that her alleged conduct would be criminal in the United States.
>
> *Manta v. Chertoff,* 518 F.3d at 1142.

Under Israeli law, the *mens rea* for an indecent act is satisfied where an act is done with the intent to achieve "sexual arousal, satisfaction, or abasement." G'vt. brief at 18.

In contrast, the mental element at the core of second-degree engendering under N.J. Stat. § 2C:24-4(a)(1) requires proof that the actor knowingly engaged in conduct with awareness that it would "impair or debauch the morals of the child." Because this specific mental element is not a required element of proof in the requesting state, Respondent faces surrender for an offense that does not satisfy the *mens rea* required under the domestic analogue. Dual criminality is therefore unfulfilled.

### C. § 348(d)(1) of Israel's Penal Law is not substantially analogous to 18 U.S.C § 113(a)(2), assault with intent to commit a felony or 18 U.S.C. § 113(a)(5), simple assault because it targets a different harm

The government also asserts that dual criminality exists between the 17 Israeli counts of indecent acts through abuse of authority and educational relationship and two federal statutes: 18 U.S.C § 113(a)(2), assault with intent to commit a felony; and 18 U.S.C. § 113(a)(5), simple assault. G'vt brief at 19. These federal statutes are not substantially analogous to the Israeli offense, nor do they share the same essential character. The essence of these Israeli counts is that they criminalize sexual assaults in the context of an abuse of authority and educational relationship. By contrast, the federal statutes proffered by the government are general assault

statutes which are violated by non-sexual physical contact. Moreover, they can be violated without the presence of a relationship of authority.

Where, as here, the underlying statutory schemes target distinct harms and protect separate social interests, dual criminality must fail. *See United States v. Khan*, 993 F.2d 1368 (9th Cir. 1993). In *Khan*, the Government argued that 21 U.S.C. § 843 (use of a communications facility to facilitate drug trafficking) was analogous to a drug conspiracy under Pakistani law because the use of a telephone could constitute an overt act under Pakistani law. The Ninth Circuit rejected the argument, ruling that dual criminality requires substantive correspondence between the legal provisions themselves:

> Many cases have held that dual criminality is satisfied even though the names of the crimes and the required elements were different in the two countries. But in each of these cases the laws of the two countries were sufficiently analogous to satisfy dual criminality. ... [W]e have not been presented with a Pakistani crime that is even analogous to 21 U.S.C. § 843.
>
> *Khan*, 993 F.2d at 1372–73.

The same defect is present here. Israeli Penal Law § 348 criminalizes abuses of authority in an educational setting to protect the sexual autonomy of minors and dependents. By contrast, 18 U.S.C. § 113 is a violent crime statute intended to protect bodily integrity from unpermitted physical violence. To treat forcible common assault as analogous to authority-based sexual misconduct would render the requirements of doctrine of dual criminality meaningless.

**D. Counts one through four related to alleged violations of § 348(d)(1) of Israel's Penal Law regarding Y.S. are not substantially analogous to 18 U.S.C § 2244(a)(5) abusive sexual contact or N.J. Stat. § 2C:14-3(a) aggravated criminal sexual conduct**

The government also asserts that dual criminality exists between counts one through four of §348(d)(a) of Israel's Penal Law as they related to Y.S. and 18 U.S.C § 2244(a)(5), which refers to 18 U.S.C § 2241(c), aggravated sexual abuse, and N.J. Stat. § 2C:14-3(a) aggravated criminal sexual conduct. G'vt brief at 19. This argument is unavailing.

First, while the government claims that all these counts "occurred when Y.S. was younger that sixteen," *Id.* at 19, in fact counts two through four are alleged to have occurred on June 9, 2022, when Y.S. had already turned 16 years old. Both the federal and New Jersey

statutes the government proposes as analogues require that a victim be under the age of 16. Therefore, dual criminality cannot exist with respect to counts two through four as a matter of law.

Additionally, aggravated sexual abuse entails the use or threat of force, the rendering unconscious of the victim, or the involuntary administration of an intoxicant. See 18 U.S.C § 2241(a-c). These elements are absent from the Israeli statute. This Court should not authorize the extradition of Mr. Farkash to face prosecution for allegedly abusing his relationship of authority with Y.S., on the basis of a comparison with New Jersey and United States crimes which do not require the abuse of authority, but instead clearly target a different harm – the use of physical force, rendering unconscious, or involuntary intoxication, of the victim.

With respect to the assertion that dual criminality exists between these four counts of §348(d)(a) of Israel's Penal Law as it relates to Y.S. and N.J. Stat. § 2C:14-3(a) aggravated criminal sexual conduct, the New Jersey statute requires that the defendant possess "supervisory or disciplinary power" over the victim. In *State v. Buscham*, 360 N.J. Super. 346, 361 (App. Div. 2003), the Appellate Division in New Jersey provided guidance to trial courts regarding how to define supervisory or disciplinary power to juries. It generated a non-exhaustive list of factors which have been incorporated into the state's model criminal jury charge. That charge includes as a factor "the power or ability of the defendant to affect the (name of victim) future participation or success." *See* N.J. Model Jury Charge, Aggravated Criminal Sexual Contact. Here, Y.S. reported to the authorities that Mr. Farkash was a "powerful and influential person," but there is no indication that Mr. Farkash had supervisory or disciplinary power as the term is defined by New Jersey courts. For example, there is no allegation that Mr. Farkash had the power to block Y.S. from participating in school activities, or to provide grades or other evaluations that would determine Y.S.'s success at the school.

**E. Counts two, six, thirteen, and fourteen, against Y.S. fail to allege sexual contact as defined by United States and New Jersey law**

The government's assertions regarding dual criminality with respect to count two and thirteen appear above. With respect to the counts six and fourteen, the government also asserts that dual criminality exists between §348(d)(1) of Israel's Penal Law and18 U.S.C § 2244(a)(2), abusive sexual contact, which to refers to 18 U.S.C § 2241(c), sexual abuse but introduces the

element of sexual contact in place of a sexual act. And it also asserts dual criminality with N.J. Stat. § 2C:14-3(b), criminal sexual contact. G'vt. brief at 19.

Under 18 U.S.C. § 2246(3), "sexual contact" is defined as: "the intentional touching, either directly or through the clothing, of the genitalia, anus, groin, breast, inner thigh, or buttocks of any person with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person." 18 U.S.C. § 2246(3). In New Jersey, "sexual contact" "means an intentional touching by (name of victim) or the defendant, either directly or through clothing, of (name of victim's) or defendant's intimate parts for the purpose of degrading or humiliating (name of victim) or sexually arousing or sexually gratifying the defendant." *See* N.J. Model Criminal Jury Charge, Aggravated Criminal Sexual Contact. Intimate parts are defined as "sexual organs, genital area, anal area, inner thigh, groin, buttock or breast of a person." (*Id.*).

Here the allegations do not meet either definition of sexual contact. Count two involves alleged touching "near his lower abdomen and his genitalia." G'vt brief at 4. Count six involves an alleged kiss on the mouth. *Id.* at 5. Count thirteen alleges a touching "of the body." *Id.* at 6. And count fourteen involves alleged viewing of the victim's genitals without touching of any kind. (*Id.*) On their face, the allegations underpinning these counts fail to meet either the federal or New Jersey definition of sexual contact.

**POINT II - DUAL CRIMINALITY DOES NOT EXISTS FOR THE FOUR COUNTS OF ALLEGED INDENCENT ACTS AGAINST A MINOR UNDER THE AGE OF SIXTEEN WITHOUT FREE CONSENT AGAINST D.R. UNDER § 348(b) OF ISRAEL'S PENAL LAW**

The government claims that dual criminality exists for four counts of the alleged conduct regarding D.R. in violation of §348(b) of Israel's Penal Law. It argues that all four counts would constitute violations of N.J. Stat. § 2C:24-4(a)(1) endangering the welfare of a child in the third degree, as well as 18 U.S.C. § 113(a)(2), assault with intent to commit a felony, and 18 U.S.C § 113(a)(5), simple assault. The analogy to the federal assault charges fails for the reasons provided above in Point I, Section C. The federal charges do not share the same essential character as the Israeli offense because they punish separate harms. With respect to the analogy to third degree endangering, that count requires "sexual contact" under New Jersey law, which is defined above in Point I, Section E. The alleged facts fail to establish any such sexual contact with respect to D.R. It is alleged that D.R. was touched on the leg moving up to the groin, the

neck, the abdomen, and the body. G'vt. brief at 8-9. Of these locations "up to the groin" comes closest to the definition of sexual contact, but it fails to state how near the touch came to an intimate part of D.R.'s body.

Next, the government asserts that count one regarding D.R. shares dual criminality with 18 U.S.C. § 2244(a)(5), abusive sexual contact, and N.J. Stat. § 2C:14-3(a), aggravated criminal sexual contact in the third degree. As explained in Part I, Section D, these offenses do not meet the requirements of dual criminality. The federal statute entails the use or threat of force, the rendering unconscious of the victim, or the involuntary administration of an intoxicant. See 18 U.S.C § 2241(a-c). These elements are absent from the Israeli statute and from the alleged conduct. And the New Jersey statute requires that the defendant possess "supervisory or disciplinary power" over the victim, which is not alleged here.

**POINT III - COUNTS TWO AND THREE INVOLVING Y.S. AND COUNTS FIVE THROUGH SEVEN INVOLVING Y.S. AND COUNTS ONE THROUGH THREE INVOLVING D.R. ARE IMPERMISSIBLY MULTIPLICITOUS IN VIOLATION OF THE DOUBLE JEOPARDY CLAUSE, THE UNIT OF PROSECUTION DOCTRINE, AND ESTABLISHED CASE LAW GOVERNING CONTINUOUS SEXUAL OFFENSES.**

Under the Double Jeopardy Clause of the Fifth Amendment and federal multiplicity doctrine, the Government is barred from fragmenting a single, continuous criminal transaction into multiple counts under the same statutory provision. In determining the permissible "unit of prosecution," the Supreme Court established the controlling threshold principle in *Bell v. United States*, 349 U.S. 81 (1955): unless the legislature has explicitly and unambiguously authorized multiple punishments for fragmented components of a single act, courts must apply the rule of lenity and resolve all doubts against dividing an ongoing transaction: "When Congress leaves to the Judiciary the task of imputing to Congress an undeclared will, the ambiguity should be resolved in favor of lenity. ... [D]oubt will be resolved against turning a single transaction into multiple offenses." *Bell*, 349 U.S. at 83–84.

Here, the extradition proffer reveals classic multiplicity that cannot survive the *Bell* framework:

- **Counts 2 and 3 (The Knesset Visit):** Counts 2 and 3 arise out of a single visit to the Knesset. The alleged conduct occurred during one continuous timeframe, in one location, and without any intervening event or meaningful cessation of contact. The Government has alleged no temporal break between the alleged acts, nor any circumstance suggesting

that Respondent formed a renewed, distinct volitional impulse. Fractioning this singular encounter into two independent criminal counts based on separate moments of contact during the same visit constitutes impermissible multiplicity.

- **Counts 5 through 7 (The Guesthouse Incident):** Counts 5, 6, and 7 similarly arise out of an overnight stay at a single guesthouse. The Government impermissibly treats separate physical contacts alleged to have taken place during this unitary encounter as freestanding felonies.

- **Counts 1 through 3 regarding D.R.:** These counts arise out of a single trip to a shopping mall with no temporal break or intervening events.

Under domestic U.S. law, these fragmented allegations would be merged or dismissed as multiplicitous prior to trial to prevent unlawful cumulative liability. The doctrine of dual criminality demands that the United States evaluate the conduct as it would be charged and prosecuted under U.S. law. Because U.S. jurisprudence does not permit fractional prosecution of a continuous sexual episode under *Bell*, counts two and three and five through seven regarding Y.S. and counts one through three regarding D.R. must be consolidated as single units, and Respondent's extraditable exposure reduced accordingly.

**CONCLUSION**

For the foregoing reasons, Respondent respectfully requests that the Court decline to certify his extradition to Israel to the extent the request is predicated on offenses that do not satisfy the requirement of dual criminality under United States law. Specifically, Respondent respectfully requests that the Court:

1. DECLINE TO CERTIFY extradition for the Israeli offense of indecent acts committed through abuse of authority against Y.S., because the conduct criminalized under Israeli Penal Law § 348 does not have a substantially analogous counterpart under United States or New Jersey law;
2. DECLINE TO CERTIFY extradition with respect to counts two through four against Y.S. on the theory that the alleged conduct constitutes an offense involving a minor under sixteen, because the complainant had already reached the age of sixteen at the time of the conduct alleged in those counts;

3. DECLINE TO CERTIFY extradition for counts one through four of indecent acts committed against a minor under sixteen years of age without free consent against D.R. because no sexual contact is alleged.
4. DECLINE TO CERTIFY extradition for multiple separate offenses arising from what constitutes a single, continuous course of conduct, and accordingly treat counts two and three and Counts five through seven involving Y.S. as two units of prosecution, rather than permitting extradition based on multiple fragmented counts arising from the same continuous episodes; and
5. DECLINE TO CERTIFY extradition for multiple separate offenses arising from what constitutes a single, continuous course of conduct, and accordingly treat counts one through three involving D.R. as one unit of prosecution, rather than permitting extradition based on multiple fragmented counts arising from the same continuous episodes; and
6. Grant such other and further relief as the Court deems just and proper.

Respectfully submitted,

*s/ Benjamin West*
Benjamin West
Assistant Federal Public Defender

cc: Assistant United States Attorney Sammi Malek, Esq. (via ECF and email)