**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| IN RE EXTRADITION OF YECHIEL YEHOSHUA FARKASH a/k/a YECHIEL FARKAS | Mag. No. 26-14012 (RLS) |

SINGH, United States Magistrate Judge.

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** comes before the Court upon the Motion of Yechiel Yehoshua Farkash a/k/a Yechiel Farkas for Release pending an extradition hearing. (ECF No. 20). On April 17, 2026, Mr. Farkash was arrested on a Complaint for Provisional Arrest with a View Toward Extradition pursuant to 18 U.S.C. § 3184. Since that time, this Court has ordered Mr. Farkash to be detained pending the extradition hearing, which is currently scheduled for December 22, 2026.[1] While being detained, the Court has heard and considered two prior applications for release brought by Mr. Farkash. Nevertheless, the Court found Mr. Farkash had failed to establish the requisite special circumstances to permit his release pending extradition proceedings. The Court now considers Mr. Farkash's most recent application, which the Government opposes.

[1] The Court previously scheduled the hearing for November 17, 2026. However, Mr. Farkash's attorney requested an adjournment of that date, which the Court granted.

## BACKGROUND

On April 14, 2026, the Government filed its Complaint for Provisional Arrest with a View Toward Extradition pursuant to 18 U.S.C. § 3184. (Doc. No. 1). The Complaint seeks to enforce a treaty obligation between the United States of America and the State of Israel relating to extradition and mutual assistance in criminal matters. (Doc. No. 1 at ¶¶ 1-4). In support of the Complaint, the Assistant United States Attorney provided a sworn certification based upon review of certain records provided by Israel under seal by the United States Department of State and upon information provided by the United States Department of Justice, Office of Internal Affairs. Primarily, the Complaint alleges that Israel accuses Mr. Farkash of committing criminal acts within its borders, including alleged attempted rape, indecent acts through abuse of authority and educational relationship, and indecent acts against at least two minors under the age of sixteen without free consent. (*See* Doc. No. 1 at ¶¶ 5-6).

On April 17, 2026, Mr. Farkash was arrested and this Court ordered that he be detained pending further proceedings. (Doc. No. 7). Thereafter, Mr. Farkash sought release pending the extradition proceedings, and the Court conducted a hearing on that application on April 23, 2026. (ECF No. 10). Having considered Mr. Farkash's first application for release as well as arguments from counsel, the Court found special

circumstances did not exist to permit release and thus ordered Mr. Farkash's continued detention. (Doc. No. 14).

Mr. Farkash subsequently submitted a new application for release, on which the undersigned conducted a hearing on June 24, 2026. (Doc. Nos. 19, 21). Again, the Court found that Mr. Farkash did not establish the requisite special circumstances and denied the application. (Doc. No. 21).

On October 15, 2026, Mr. Farkash presented the instant application seeking release pending the December 22, 2026 extradition hearing. (Doc. No. 29). The Government opposes the application. (Doc. No. 31).

## DISCUSSION

Courts review applications for release pending extradition hearings different than bail applications in criminal matters. *See Wright v. Henkel*, 190 U.S. 40, 61-63 (1903); *cf. Hababou v. Albright*, 82 F. Supp. 2d 347, 351 (D.N.J. 2000) (considering bail standard for extradition hearings in context of *habeas corpus* petition). In extradition cases, there is a longstanding presumption against release "and only 'special circumstances' justify release on bail." *Hababou*, 82 F. Supp. 2d at 351 (citing *Wright*, 190 U.S. at 63; *United States v. Kin-Hong*, 83 F.3d 523, 524 (1st Cir. 1996) (*per curiam*)); *see also in re Extradition of Sidali*, 868 F. Supp. 656, 657 (D.N.J. 1994). Thus, "bail should be granted 'only in the most pressing circumstances, and when the requirements of justice are absolutely peremptory.'" *United States v. Leitner*, 784 F.2d 159, 160 (2d Cir. 1986) (quoting *in re Mitchell*, 171 F. 289, 289 (S.D.N.Y. 1909)).

Such circumstances are "case specific." *In re Extradition of T.C.*, 740 F. Supp. 3d 10, 16 (D. Mass. 2024) (internal quotation marks and citation omitted). They are limited to where the justification "is pressing as well as plain." *In re Klein*, 46 F.2d 85, 85 (S.D.N.Y. 1930). In other words, "special circumstances are supposed to be limited to the most extraordinary circumstances and cannot involve factors applicable to all potential extraditees." *In re Extradition of Garcia*, 761 F. Supp. 2d 468, 472 (S.D. Tex. 2010).

Though undefined, courts have labeled circumstances that might be "special" to warrant release during the pendency of extradition proceedings. *See, e.g.*, *Hababou*, 82 F. Supp. 2d at 351 (citing cases). The Government's delay in seeking or prosecuting extradition is one such circumstance. *See, e.g.*, *Wroclawski v. United States*, 634 F. Supp. 2d 1003, 1008 (D. Ariz. 2009); *see also in re Extradition of Kirby*, 106 F.3d 855, 863 (9th Cir. 1996); *United States v. Williams*, 611 F.2d 914, 915 (1st Cir. 1979); *in re Extradition of Molnar*, 182 F. Supp. 2d 684, 687-89 (N.D. Ill. 2002). The high probability or substantial likelihood of success in defending against extradition is another. *See, e.g.*, *United States v. Kin-Hong*, 83 F.3d 523, 524-25 (1st Cir. 1996); *Salerno v. United States*, 878 F.2d 317 (9th Cir. 1989); *see also in re Extradition of Taylor*, 471 F. Supp. 3d 389, 395 (D. Mass. 2020); *United States v. Taitz*, 130 F.R.D. 442, 444 (S.D. Cal. 1990).

Courts have likewise found circumstances that would not be "special" and thus that do not justify release pending extradition proceedings. *See, e.g.*, *in re Extradition of Russell*, 805 F.2d 1215, 1217 (5th Cir. 1986) (pending civil litigation, the need to consult

with counsel, financial or emotional hardship to the fugitive or his family are not special circumstances when considering bail on a habeas petition); *Williams*, 611 F.2d at 915 (lack of risk of flight alone insufficient to warrant bail); *in re Extradition of Rovelli*, 977 F. Supp. 566, 568 (D. Conn. 1997) (same); *in re Extradition of Breyer*, 32 F. Supp. 574, 593 n.27 (E.D. Pa. 2014) (age and physical infirmities not special circumstances); *cf. Bolanos v. Avila*, No. 09-1208, 2009 WL 3151328, at *4 (D.N.J. Sept. 24, 2009) (availability of better, private health care not a special circumstance warranting bail requested via habeas petition).

In his latest request seeking bail, Mr. Farkash contends there are at least two categories of "special circumstances" that warrant his release: a language barrier he faces at the Essex County Correctional Facility ("ECCF"), where he is currently being detained, and the hardships visited upon his family by his continued detention. In arguing that he is not a flight risk or danger to the community, Mr. Farkash denies the allegations by Israeli authorities.[2] Mr. Farkash, however, does not raise in connection with his request for release an argument that there is a likelihood that he will defeat the extradition charges. The Court thus considers whether the language barrier and/or the hardships to Mr. Farkash's family rise to the level of "special circumstances."

---

[2] He separately challenges the extradition in anticipation of the extradition hearing. (*See* Doc. No. 27).

### *Language Barrier*

Mr. Farkash argues that he speaks Hebrew, which has caused communication issues while being housed at ECCF. More specifically, Mr. Farkash contends that, although the facility has provided him with a tablet to submit requests and grievances, the tablet does not translate to or from Hebrew.[3] Additionally, Mr. Farkash states that his language barrier has caused at least one altercation with another detainee who misunderstood Mr. Farkash.

The Government argues that Mr. Farkash's claims of a language barrier are unfounded or otherwise exaggerated and do not rise to the level of a special circumstance. (Doc. No. 31 at p. 5). The Government points out that Mr. Farkash has been able to effectively communicate with ECCF officials. It points out that Mr. Farkash requested a change to voluntary protective custody and sufficiently articulated his reasons for wanting such protection—which had to do with the nature of his alleged offenses rather than any communication issues. (*See* Doc. No. 31 at pp. 3-4; Doc. No. 31-1, Ex. A at ECF p. 8). The Government also reports that the ECCF Inmate Advocate has informed the United States Marshals Service that Mr. Farkash "'communicates with

[3] Mr. Farkash also asks the Court to reconsider its earlier determination denying release to the extent the Court relied on the Government's mistaken belief that ECCF provided English-to-Hebrew translations on the facility-issued tablets. While the Government corrected the record in its opposition on the present application to make clear that such translations were not available on the tablet, (Doc. No. 31 at p. 3), the Court did not solely rely on the presence or absence of ECCF's translation services in previously denying Farkash's release.

our staff, including [the Advocate], in English and does not present or express any issues with communicating.'" (Doc. No. 31 at p. 4).

The Government adds that, if indeed Mr. Farkash has trouble effectively communicating because of a language barrier, "the remedy is not release." (Doc. No. 31 at p. 4). For example, Mr. Farkash could be housed in an area of ECCF with other Hebrew-speaking detainees to facilitate translation. Indeed, prior to his request for protective custody, Mr. Farkash was housed in a cell with another Hebrew-speaking detainee, who had helped Mr. Farkash with translation. Another option would include transferring Mr. Farkash to another facility which provides language hotlines or Google translate for non-English speakers.

Importantly, there is no case law to support a finding that a language barrier rises to the level of a special circumstance warranting release pending extradition proceedings. Indeed, it may very well be that fugitives subject to extradition hearings often are non-English speakers. A common factor such as being a non-English speaker is not extraordinary or plainly pressing.[4] To accept otherwise would essentially create an exception to the presumption for detention for any non-English speaking fugitive. Mr. Farkash has not pointed to any basis in law to create such an exception. Moreover, on

[4] Notably, courts have considered that a detainee does not speak English and the language barriers that ensue in determining whether extraordinary circumstances exist to warrant equitable tolling of the time within which a petition for habeas is filed. *See, e.g.*, *Pabon v. Mahanoy*, 654 F.3d 385, 400-01 (3d Cir. 2011). Mr. Farkash, however, has not pointed to any case in which such language barriers rose to the level of justifying release on a habeas petition.

this record, it appears that Mr. Farkash has been able to effectively communicate his needs and requests to the officers at ECCF as well as to his attorney. Accordingly, any alleged language barrier suffered by Mr. Farkash does not rise to a special circumstance warranting release in this context.

*Hardships to Mr. Farkash's Family*

Next, Mr. Farkash argues that his family is afflicted with financial and emotional hardships due to his continued detention. Specifically, he reports that his wife has had difficulty managing the family's financial affairs in Mr. Farkash's absence. Additionally, Mr. Farkash notes that his daughter suffers from a chronic health condition that requires ongoing medical support. According to Mr. Farkash and his daughter's physician, Mr. Farkash's wife, without his support, is unable to fully assist in their daughter's care. Mr. Farkash represents that his wife is a non-English speaker without a driver's license, leading her to rely solely on community support. Mr. Farkash also contends that his detention has affected his son's ability to perform in school, as attested to through an unsworn letter from his son's teacher.

The Government argues that the hardships to Mr. Farkash's family are not unique and, while unfortunate, do not constitute "special circumstances." According to the Government, Mr. Farkash has pointed to an "outpouring of community support for the family" since his detention, implying that the family has an alternative avenue of support. In addition, the Government notes that, under the proposed bail package, Mr. Farkash would be confined to his home, which would not alleviate the burden associated with

transporting his daughter to doctor appointments and would not permit Mr. Farkash to provide financial support through employment.

There is no doubt that an individual's confinement strains his family. However, such familial hardships are not unique to Mr. Farkash and have been rejected as being special circumstances.[5] *See, e.g.*, *Russell*, 805 F.2d at 1217 (endorsing conclusions of both magistrate judge and district court that "financial and emotional hardship was present in almost all cases and therefore did not constitute a 'special circumstance'"); *see also in re Extradition of Morrell*, No. 24-mj-5020, 2024 WL 756017, at *4 (W.D. Wash. Feb. 23, 2024) (citing cases denying familial hardship as neither unique nor "special" despite fugitive providing daily care for paralyzed spouse); *Santos v. Thomas*, No. 11-6330, 2012 WL 12964319, at *3 (C.D. Cal. June 29, 2012) (denying bail where fugitive was primary source of income for wife and three children, noting "incarceration regularly creates difficulties for an extraditee and his family"); *in re Extradition of Beresford-Redman*, 753 F. Supp. 2d 1078, 1088 (C.D. Cal. 2010) (quoting *Russell*, 805 F.2d at 1217); *Garcia*, 761 F. Supp. 2d at 472 (rejecting familial financial hardship as "special circumstance" where fugitive claimed his family could be denied financial benefits if not released to pursue pending workers' compensation claim); *in re Extradition of Saldana*, No. 09-mj-14, 2009 WL 2134377, at *3 (W.D. Tenn. July 10, 2009) (relying on *Russell*, 805 F.2d at 1217, in

[5] Notably, the alleged offenses at issue occurred between 2020 and 2023, while Mr. Farkash lived in Israel, and that Mr. Farkash fled Israel in January 2024, but did not begin residing with his family until about July 2025. (*See* Doc. No. 24-1 at ECF pp. 5-6).

denying bail pending extradition hearing given lack of special circumstance related to familial financial and emotional hardship).

The Court is sympathetic to the hardships facing Mr. Farkash's family during this time. However, such hardships are "present in almost every case where a defendant with family faces detention pending adjudication." *In re Extradition of Drumm*, 150 F. Supp. 3d 92, 99 (D. Mass. 2015). As such, the Court declines to find that the asserted burdens posed to Mr. Farkash's family are unique or constitute special circumstances warranting Mr. Farkash's release pending the extradition hearing.

Finally, the Court notes that it has scheduled the extradition hearing for December 22, 2026. With the process reaching its conclusion, Mr. Farkash is not unduly burdened by any extraordinary delay.

**CONCLUSION AND ORDER**

Therefore, for the reasons set forth herein and for other good cause shown, the Court denies Mr. Farkash's application because he has failed to establish special circumstances, individually or cumulatively, that warrant his release pending the extradition hearing. Accordingly,

**IT IS** on this **23d** day of **November 2026** hereby

**ORDERED** that Mr. Farkash's request for bail pending his extradition hearing is **DENIED**; and it is further

**ORDERED** that Mr. Farkash shall remain in the custody of the U.S. Marshals; and it is further

**ORDERED** that the Clerk of the Court shall **TERMINATE** the Motion pending at Docket Entry Number 29.

**SO ORDERED**.

/s/ Rukhsanah L. Singh
**RUKHSANAH L. SINGH**
**UNITED STATES MAGISTRATE JUDGE**